UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

CHRISTINA ARGYROS,

                        Plaintiff,

     - against –

THE LIGHTSTONE GROUP, LLC., JENNIFER CLINE as an individual and in her capacity as Executive Vice President of Human Resources of THE LIGHTSTONE GROUP, LLC., and MITCHELL HOCHBERG, as an individual and in his capacity as Chief Operating Officer of THE LIGHTSTONE GROUP, LLC.,

                        Defendants.

**Case No.: 1:18-cv-05142**

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**

---------------------------------------------------------------------------x

Ms. Christina Argyros, by her attorneys, White, Nisar & Hilferty, LLP, alleges upon knowledge to herself and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff Christina Argyros ("Ms. Argyros"), a dedicated Director of Human Resources with a strong performance record, who suffers from clinical depression and anxiety disorder, files this complaint alleging that The Lightstone Group, LLC ("Defendant") illegally discriminated and retaliated against her and unlawfully terminated her employment based on her medical disability. Ms. Argyros diligently performed her job duties for Defendant throughout her employment, only to receive disparate treatment in her employment opportunities and an unceremonious termination of her employment. Ms. Argyros now requests this Court enforce her civil rights as protected by federal, state, and local law.

2.    Plaintiff brings this action pursuant Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §1981 *et seq.*, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act,

42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.* against Defendant.

## JURISDICTION & VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's Civil Rights under Title VII and the other aforementioned federal statutes. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

5. Ms. Argyros complied with all statutory prerequisites to filing this action.

6. On August 16, 2017, Ms. Argyros filed a Verified Complaint with New York State Division of Human Rights ("NYSDHR") charging Defendant with unlawful discriminatory employment practices.

7. On March 13, 2018, the Equal Employment Opportunity Commission ("EEOC") issued Ms. Argyros a notice of right to file suit in federal court for allegations of unlawful discrimination on the basis of medical disability discrimination and retaliation as set forth in the Complaint.

8. Ms. Argyros filed this action within 90 days of receipt of the EEOC's decision.

9. Ms. Argyros met any and all other prerequisites to the filing of this suit.

## THE PARTIES

10. Plaintiff Christina Argyros is a female residing in Bayside, New York. Lightstone employed Ms. Argyros from November 2015 through June 1, 2017.

11. Defendant The Lightstone Group, LLC is a privately held real estate investment company with its headquarters in New York, New York.

12. Defendant Jennifer Cline is an individual serving as Executive Vice President of Human Resources of The Lightstone Group, LLC.

13. Defendant Mitchell Hochberg is an individual serving as Chief Operating Officer of The Lightstone Group, LLC.

## FACTUAL ALLEGATIONS

14. Defendant hired Ms. Argyros in November 2015 as Director of Human Resources.

15. As set forth in greater detail below, Ms. Argyros experienced a plethora of discrimination, retaliation and ultimate termination based on her medical disability during her employment with Defendant. Despite her acknowledged "extraordinary work and dedication," Defendant accused Ms. Argyros of baseless performance issues after she required treatment for her medical disabilities. Defendant subjected Ms. Argyros to unwarranted accusations, demands, threats of adverse employment action, and a demotion. Ms. Argyros dedicated herself to her work during the fall 2016 busy season and her health suffered as a result. Ms. Argyros complied with these unreasonable protocols and consistently prioritized her work over her own health. Defendant granter her leave under The Family and Medical Leave Act to heal, only to be greeting upon her return with a significant demotion and unwarranted job transfer, which resulted in a taxing three-hour commute for Ms. Argyros. Defendant generated false performance issues to justify wrongfully terminating MS. Argyros based upon a discriminatory animus towards her disabilities.

3

16. As Director of Human Resources, Ms. Argyros reported directly to Executive Vice President of Human Resources Jennifer Cline.

17. In March and April 2016, Chief Operating Officer Mitchell Hochberg and Cline repeatedly thanked Ms. Argyros for her extraordinary work and dedication during a challenging time for the Human Resources department.

18. On October 6, 2016, Chief Financial Officer Donna Brandin implemented Ms. Argyros' strategy for closing Defendant's Baltimore office. Accordingly, Cline complimented Ms. Argyros' acumen in managing this large project as well as Hochberg's demanding procedures in the office closure.

19. On October 13, 2016, Ms. Argyros commenced the Baltimore office team transition. Again, Cline applauded Ms. Argyros' tactful execution of the Baltimore closing.

20. During October and November 2016, Defendant placed Ms. Argyros in charge of the paperless open enrollment initiative. Ms. Argyros single handedly implemented this plan, a significant undertaking as this was a new procedure for the company.

21. Due to the demanding nature of Defendant's 2016 busy fall real estate season, handling both the Baltimore closure and implementing paperless open enrollment caused Ms. Argyros' health to suffer.

22. On October 27, 2016, Chief Financial Officer Donna Brandin requested information from Ms. Argyros regarding Defendant's budget. Brandin did not request this information again for almost a month.

23. On Friday, November 11, 2016, Ms. Argyros abruptly left work to attend to a family medical emergency.

24.     Brandin sent an additional email on Saturday, November 12, 2016 regarding the budgetary information stating, "I want to try and wrap this up this week if possible. When do you think I can get this." Cline in turn emailed Ms. Argyros solely requesting information for the budget. Cline sent only one email and refused to reach out to Ms. Argyros by phone, either by call or text. Furthermore, Cline was fully aware Ms. Argyros left work abruptly the previous afternoon to handle a medical emergency. In general, Cline instructed Ms. Argyros to check her email once a day during the weekend. On November 12, Ms. Argyros checked her email around midday, before Cline sent her follow-up inquiry.

25.     On Monday, November 14, 2016, Ms. Argyros promptly provided Brandin with the requested information. Later that day, Cline sent Ms. Argyros a lengthy email about her "responsiveness," without prior conversation, purely to document one instance of an alleged performance issue.

26.     Defendant never initiated any performance counseling or reprimands against Ms. Argyros in connection with this alleged performance deficiency. To address Cline's false allegations of communication issues, Ms. Argyros began copying Cline on all email correspondence.

27.     Later that day, Ms. Argyros informed Cline that she needed to meet with her treating physician on November 23, 2016. Cline acknowledged and thanked Ms. Argyros for the advanced notice.

28.     On November 15, 2016, Ms. Argyros met with Cline for lunch to discuss a plan moving forward to safeguard Ms. Argyros' health. Ms. Argyros advised Cline that she suffered from aggravated symptoms of her clinical depression and anxiety disorder due to the stress of work. As a result, Ms. Argyros indicated that she may may need to step away from her work or

5

leave the office temporarily if she experienced an anxiety attack. Namely, Ms. Argyros was requesting a reasonable accommodation to address her anxiety disorder. Cline requested that if this were to occur, Ms. Argyros track Cline down wherever she was within the office, update her on all current business matters Ms. Argyros was conducting, and notify Cline that she needed to step away. Ms. Argyros recalled a comment made by Cline about another employee with a mental disability who threatened to hurt herself that she "just wanted attention." This comment and Cline's response to Ms. Argyros' request illustrate her lack of understanding about the nature of anxiety disorders. Ms. Argyros' anxiety attacks could not merely be paused, staved off until notifying cline with a full status update, and resumed after ensuring she would not hamper Defendant's business day. Cline's proposed procedure was overly burdensome to Ms. Argyros, but she implemented it to the best of her ability.

29. During this same conversation, Ms. Argyros again mentioned her doctor's appointment on November 23, stating that the outcome might result in changes in her treatment which might require a few days off. In response, Cline demanded Ms. Argyros obtain a "worst-case scenario" note from her Physician, Dr. Amy Kelley, predicting the longest amount of time Ms. Argyros would require a medical accommodation, so that she can "plan accordingly." Anxiety disorders cannot be approximated in this manner, but Cline was more concerned with her business plans than considering a reasonable accommodation for Ms. Argyros' needs.

30. On Monday, November 16, 2016, Defendant applauded Ms. Argyros' open enrollment presentation. Later that day, Cline emailed a summary of their conversation from the prior day, notably omitting the insensitive request for a "worst case scenario" note from Ms. Argyros' physician. Cline drafted this email as if it were a reprimand and created it solely to document an unreasonable protocol to generate baseless performance issues against Ms. Argyros

in the future. As a Human Resources professional, Ms. Argyros understood the necessity of documentation, but this action is resorted to only in the face of negative employee conduct. Ms. Argyros was taken aback by the harsh tone and demands Cline made in response to Ms. Argyros' medical problems. At this point, Cline also attached Ms. Argyros' approved request for her doctor's appointment on November 23, 2016. Cline too no issue with Ms. Argyros' request at the time she approved it in October. Cline pretextually characterized Ms. Argyros' medical disability as a performance issue.

31. On November 22, 2016, Ms. Argyros agreed to alter her November 23, 2016 paid-time off to a half-day to satiate Cline's discontented attitude. Further, Ms. Argyros emailed General Counsel Joseph Teichman regarding a Fair Labor Standards Act Audit. Cline noted Ms. Argyros' excellent work and stated that, "[h]e's [Teichman] not easy—I know." By the end of the day, Ms. Argyros established a comprehensive project update to comply with Cline's "worst-case scenario" ultimatum despite only expecting to be away from the office for a short period of time.

32. On November 23, 2016, Ms. Argyros worked from home during the morning before attending her scheduled visit with Dr. Kelley. Based upon this appointment, Dr. Kelley unexpectedly hospitalized Ms. Argyros due to the severity of her condition for treatment.

33. On December 1, 2016, Ms. Argyros' treating physician discharged her from full-time to part-time hospitalization.

34. On January 25, 2017, Defendant approved Ms. Argyros' medical leave through February 28, 2017. However, after February 14, 2017, Defendant classified her medical leave as a personal leave of absence. Throughout the duration of Ms. Argyros' leave, November 2016 to March 2017, Cline consistently reported false allegations of Ms. Argyros' performance issues to

Chief Executive Officer Mitchell Hochberg, stating Ms. Argyros was irresponsible, ignored all work emails and showed no responsibility for her position as Director.

35. On February 14, 2017, Ms. Argyros' FMLA leave expired. However, she required further time to heal, and produced a medical note from Dr. Kelley clearing her for work beginning on March 1, 2017 on a part-time basis, specifically, working no more than three days a week with accommodations for follow-up appointments each Monday to manage her treatment. Based on this letter, Cline incorrectly assumed Ms. Argyros was unable to perform the essential functions of her job and began preparing to remove her from this position.

36. Defendant commonly granted extended paid leave and accommodations for its employees without adverse employment actions. For example, Defendant granted an extended sixth month of paid leave for the owner's personal driver with no qualms and allowed a male employee to telecommute from Florida despite Respondent's lack of official policy regarding telecommuting. However, a female employee was denied the ability to work from home one day a week to care for her children and was subsequently forced out in a similar way to Ms. Argyros. Defendant subsequently rehired this employee as a remote consultant to perform the same work responsibilities because Respondent could not effectively replace her. Respondent also routinely declined to interview or hire African American employees, referring to them in code as "Canadians" to avoid suspicion of a discriminatory animus in its hiring practices.

37. On February 16, 2017, Cline sent Ms. Agryros an email addressing Dr. Kelley's return to work clearance letter and pointedly reminded Ms. Argyros that her thirteen (13) additional days off were not "a job protected absence." Further, based upon Dr. Kelley's treatment requirements, Cline declined to reinstate Ms. Argyros as Director and suggested that Ms. Argyros accept a demotion to Benefits Manager, a transfer to Lakewood, New Jersey, and a salary reduction

from $135,000 to $75,000 per year. As Ms. Argyros' protected medical leave came to an end, Cline swiftly pushed for the removal of her position and reduction of her salary in response to her request for a reasonable accommodation.

38. On Monday, February 27, 2017, Cline and Ms. Argyros met to discuss Ms. Argyros' return to work. Cline reinforced the imminent possibility of this removal by again requesting a guarantee by Dr. Kelley about Ms. Argyros' ability to return to full-time work within two weeks to maintain her current position as Director in the New York office.

39. On Tuesday, February 28, 2017, Ms. Argyros' treating physician Dr. Kelley spoke over the phone with Cline to explain the complex nature of anxiety disorder treatment. Dr. Kelley explained that Cline's demands for a guarantee were unreasonable given the generally prescribed treatment plan. Dr. Kelley approved Ms. Argyros to commence a four-day work week but was unable to make any concrete guarantees going forward, any developments would be monitored through continuing treatment. Cline remained unresponsive to Ms. Argyros' concerns or requests for a reasonable accommodation.

40. That evening, Tuesday, February 28, 2017, Defendant decided to eliminate Ms. Argyros' position in the New York office and transfer her to Lakewood, New Jersey on a full-time basis. Namely, Cline and Hochberg discussed Dr. Kelley's prognosis and decided to implement an adverse action in the form of a transfer and demotion against Ms. Argyros.

41. On Wednesday, March 1, 2017, Defendant informed Ms. Argyros' of her transfer. Ms. Argyros inquired as to why Cline did not mention this concrete decision during their discussions earlier in the week. Cline responded that the final decision was made the prior evening. Ms. Argyros asked Cline what provoked the decision and Cline responded that Hochberg was angry about Ms. Argyros' absence from work and that she became ill at an inconvenient time for

Cline. Ms. Argyros explained to Cline that the commute would be overly burdensome considering her medical condition. Cline strongly disagreed and refused to discuss the matter further.

42. Cline also indicated that Ms. Argyros would return to the Lakewood office at her alleged previous salary, $133,500. Cline had previously confirmed in her February 14, 2017 email that Ms. Argyros' salary was $135,000. Compensation review decisions were made in December 2017—despite previously quoting Ms. Argyros' salary at $135,000, Cline now offered a rate that did not reflect the previously approved incremental increase as further retaliation for Ms. Aryros' accommodation requests. Additionally, Cline indicated that Chief Executive Officer David Lichtenstein wanted someone "warm and fuzzy" and a "mother hen" in the Lakewood office full-time and represented, "[t]o be honest I don't think David [Lichtenstein] knows who you are or even realizes you've been out on leave."

43. On March 2, 2017, Defendant rescinded the Lakewood office position and demanded Ms. Argyros accept a severance package by March 14, 2017. Conveniently, this agreement waived Ms. Argyros' legal rights. Cline admitted that Hochberg resented Ms. Argyros' extended medical leave and therefore eliminated her position. Cline suggested a transition period until June 2, 2017 to assist in the restructuring of the Human Resources department at the Lakewood office after which she would resign. Further, Cline misrepresented that Ms. Argyros agreed to return only after Cline returned from vacation, despite Ms. Argyros' March 1, 2017 clearance letter.

44. On March 9, 2017, Ms. Argyros accepted the transitional position at Defendant's Lakewood office.

45. On March 17, 2017, Defendant approved Ms. Argyros' transition period on the condition that she execute a Severance Agreement and General Release by March 24, 2017.

46. On March 23, 2017, Ms. Argyros expressed her apprehension to sign the Severance Agreement to Cline. Cline encouraged her to start interviewing for other positions. Later that day, Brandin was unaware that Ms. Argyros would not return full time, but told her, "[g]ood to have you back."

47. On March 24, 2017, Respondent required that Ms. Argyros return the Severance Agreement by March 28, 2017.

48. On March 27, 2017, Ms. Argyros requested additional time to consult her attorney. Cline's curt reply email demanded that Ms. Argyros directly communicate her concerns.

49. On March 28, 2017, Respondent conducted an executive meeting to discuss Ms. Argyros' Severance Agreement. Cline again pressured Ms. Argyros to execute it, despite her reservations.

50. On March 29, 2017, Teichman welcomed Ms. Argyros back to work and was surprised to learn that her position was temporary. She thought he was joking and that, as General Counsel, he would have been aware of her Severance Agreement. He replied, "I'm not kidding you. What is going on?"

51. On March 29, 2017, a colleague informed Ms. Argyros that she believed Cline was retaliating against her because of her extended medical leave.

52. On April 4, 2017, the colleague further informed Ms. Argyros that Cline intentionally denigrated her to Hochberg.

53. On April 5, 2017, Defendant refused to permit Ms. Argyros to commence her transitional position until she executed the Severance Agreement.

54. On April 26, 2017, Cline intentionally excluded Ms. Argyros from the New Jersey "Best Places to Work For" Award's Ceremony.

55. On May 3, 2017, Ms. Argyros approached Cline regarding her resignation announcement. Cline failed to respond with a definite plan.

56. On May 4, 2017, Teichman met Ms. Argyros in a secluded area of the office and admitted that Cline had intentionally sabotaged her. Further, Teichman admitted that, "[y]ou have a strong case" and that "this was all Jennifer [Cline's] wrongdoing."

57. On May 10, 2017, Cline again requested Ms. Argyros provide medical certification for accommodations.

58. On May 11, 2017, Ms. Argyros replied to Cline's bewildering demand to consider the proposed June 2, 2017 resignation and Defendant's refusal to provide an accommodation.

59. On May 11, 2017, Defendant failed to include Ms. Argyros in Key Benefit Utilization Review Meetings in retaliation for her discrimination complaint. Cline intentionally left her off the calendar invite.

60. On May 12, 2017, Cline intentionally excluded Ms. Argyros from an annual Workplace Law Conference scheduled for June 2, 2017. When Ms. Argyros confronted Cline, Cline sent her an email with the conference information.

61. On May 18, 2017, Cline excluded Ms. Argyros from a Benefits Compliance Seminar.

62. On June 2, 2017, Defendant unlawfully terminated Ms. Argyros' employment.

63. Upon information and belief, Defendant terminated Ms. Argyros due to her medical disability, and manufactured baseless performance issues as a basis to conceal its discriminatory animus against her.

64. Defendant treated Ms. Argyros differently as compared to similarly-situated employees without a medical disability. Specifically, Defendant disciplined Ms. Argyros more

harshly than her comparators, denied her reasonable accommodation requests, subjected her to a significant demotion and unlawfully terminated her employment based on manufactured claims of performance issues. As such, Defendant discriminated against Ms. Argyros in the terms, conditions, and privileges of her employment because of her medical disability.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000)

65. Ms. Argyros repeats and realleges every paragraph above, as if fully set forth herein.

66. Ms. Argyros is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

67. Ms. Argyros possessed proper qualifications for Defendant to continue her employment.

68. Defendant's unsubstantiated accusations of performance issues against Ms. Argyros adversely affected her employment.

69. The circumstances previously herein set forth give rise to the inference of medical disability discrimination by Defendant.

70. To date, Defendant continues to discriminate against Ms. Argyros and violate her Civil Rights.

71. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 §703(a), Ms. Argyros suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. §12101)

72. Ms. Argyros repeats and realleges every paragraph above, as if fully set forth herein.

73. Ms. Argyros is a member of a covered employee pursuant to The Americans with Disabilities Act of 1964, 42 U.S.C. 12101 *et seq*.

74. Ms. Argyros possessed proper qualifications for Defendant to continue her employment.

75. Defendant's unsubstantiated accusations of performance issues against Ms. Argyros adversely affected her employment.

76. The circumstances previously herein set forth give rise to the inference of medical disability discrimination by Defendant.

77. To date, Defendant continues to discriminate against Ms. Argyros and violate her Civil Rights.

78. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of The Americans with Disabilities Act of 1964, 42 U.S.C. 12101, Ms. Argyros suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

79. Ms. Argyros repeats and realleges every paragraph above, as if fully set forth herein.

80. Ms. Argyros is a member of a protected class pursuant to New York Executive Law § 296.

81. Ms. Argyros possessed proper qualifications for Defendant to continue her employment.

82. Defendant's unsubstantiated accusations of performance issues against Ms. Argyros adversely affected her employment.

83. The circumstances previously herein set forth give rise to the inference of medical disability discrimination.

84. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Ms. Argyros suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y.C. ADMIN. CODE §8-107)

85. Ms. Argyros repeats and realleges every paragraph above, as if fully set forth herein.

86. Ms. Argyros is a member of a protected class pursuant to New York City Administrative Code § 8-107.

87. Ms. Argyros possessed proper qualifications for Defendant to continue her employment.

88. Defendant's unsubstantiated accusations of performance issues against Ms. Argyros adversely affected her employment.

89. The circumstances previously herein set forth give rise to the inference of medical disability discrimination.

90. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.Y.C. Admin. Code §8-107, Ms. Argyros suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Ms. Argyros prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State and City of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Ms. Argyros for all monetary and/or economic harm;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Ms. Argyros for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E. An award of damages for any and all other monetary/non-monetary losses suffered by Ms. Argyros in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages;

    G.    An award of costs that Ms. Argyros incurred in this action, as well as Ms. Argyros's reasonable attorneys' fees to the fullest extent permitted by law; and

    H.    Such other and further relief as the Court may deem just and proper.

Dated: June 8, 2018
       New York, New York

                                Respectfully submitted,

                                M. Dinora Smith (MS2096)
                                White, Nisar & Hilferty, LLP
                                *Attorneys for Plaintiff*
                                *Christina Argyros*
                                570 Lexington Avenue, 16th Floor
                                New York, New York 10022
                                (646) 690-8881